GAIL A. PARLEY *v.* JON A. PARLEY
(AC 21349)

Lavery, C. J., and Foti and Mihalakos, Js.

Argued June 6—officially released October 8, 2002

*Jon A. Parley,* pro se, the appellant (defendant).

*Daniel H. Kennedy, Jr.,* for the appellee (plaintiff).

*Opinion*

MIHALAKOS, J. The defendant, Jon A. Parley, appeals from the judgment of the trial court dissolving the parties' marriage. On appeal, the defendant claims that the court improperly (1) ordered him to obtain life insurance to secure the court's alimony order and (2) distributed the marital home in that the court (a) excluded evidence of a written contract, (b) awarded to the plaintiff a credit in the amount of $60,000 and (c) failed

to provide specific figures in its financial orders.[1] We reverse the judgment of the trial court as to its financial orders only and remand the matter to that court for a new trial as to the financial matters.

The following facts and procedural history are relevant to our consideration of the defendant's claims on appeal. The parties were married on August 10, 1979. Five children were born to the marriage, two of whom reached the age of majority prior to the dissolution action. On April 20, 1999, the plaintiff, Gail A. Parley, brought an action seeking dissolution of the marriage, claiming that it had irretrievably broken down.

The court entered orders regarding property distribution, alimony, child support and other miscellaneous matters. As part of the dissolution decree, the court ordered the defendant to pay to the plaintiff alimony in the amount of $50 per week. At the time of the dissolution, the defendant held a life insurance policy. To secure the alimony payment, the court ordered the defendant to obtain additional life insurance. In addition, the court found that "[t]he parties have agreed to a value of the marital home in the amount of $142,000 . . . ." After ordering that the plaintiff receive a credit in the amount of $60,000 from the equity in the marital home, the court distributed the remaining equity in the property, 60 percent to the plaintiff and 40 percent to the defendant. This appeal followed. Additional facts will be set forth as necessary.

---

[1] In addition, the defendant raises for the first time several claims in his reply brief. "It is a well established principle that arguments cannot be raised for the first time in a reply brief. . . . Claims of error by an appellant must be raised in his original brief . . . so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument." (Citations omitted; internal quotation marks omitted.) *Kelley* v. *Tomas*, 66 Conn. App. 146, 163–64, 783 A.2d 1226 (2001). Thus, we decline to review those claims presented by the defendant in his reply brief that were not previously raised.

Before addressing the defendant's claims on appeal, we first set forth our well settled standard of review. "Our standard of review in domestic relations cases is clear. We will not reverse a trial court's rulings regarding financial orders unless the court incorrectly applied the law or could not reasonably have concluded as it did. . . . A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria." (Citation omitted; internal quotation marks omitted.) *Askinazi* v. *Askinazi*, 34 Conn. App. 328, 330–31, 641 A.2d 413 (1994). "In reviewing the trial court's decision under [an abuse of discretion] standard, we are cognizant that [t]he issues involving financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Cordone* v. *Cordone*, 51 Conn. App. 530, 532–33, 752 A.2d 1082 (1999).

"A reviewing court must indulge every reasonable presumption in favor of the correctness of the trial court's action to determine ultimately whether the court could reasonably conclude as it did. . . . This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant." (Internal quotation marks omitted.) *Askinazi* v. *Askinazi*, supra, 34 Conn. App. 331.

We now turn to the defendant's claims.

I

The defendant first claims that the court improperly ordered him to obtain additional life insurance to secure

his alimony obligation. Specifically, he argues that the court failed to inquire regarding the cost and availability of such insurance, and, therefore, improperly ordered him to obtain the insurance. We agree and vacate the order of the court regarding the additional insurance to secure the alimony payments.

"The ordering of security for alimony by a trial court is discretionary under [General Statutes § 46b-82]." *Cordone* v. *Cordone*, supra, 51 Conn. App. 534; General Statutes § 46b-82. The court's discretion, however, is not without limits. This court has held that the trial court must delve into certain matters before ordering a party to obtain life insurance to secure the payment of alimony. See *Michel* v. *Michel*, 31 Conn. App. 338, 341, 624 A.2d 914 (1993). Specifically, the court must engage in a search and inquiry into the cost and availability of such insurance. Id.; see also *Lake* v. *Lake*, 49 Conn. App. 89, 92, 712 A.2d 989, cert. denied, 246 Conn. 902, 719 A.2d 1166 (1998).

In the present case, the defendant held a life insurance policy at the time of the dissolution. The court ordered him to obtain additional life insurance to secure his alimony payments without inquiring into the cost or availability of the additional insurance. As in *Michel*, the court in the present case "has entered . . . financial orders that may be inappropriate, that is, too high or too low depending on the funds required to obtain such [additional] insurance." *Michel* v. *Michel*, supra, 31 Conn. App. 341. Although the charged party in *Michel* held no insurance at the time of the dissolution; id., 340; we conclude that the same analysis is necessary in cases in which a party is ordered to obtain additional insurance. Because the court did not inquire as to the cost and availability of the additional life insurance, the court's order lacks a reasonable basis in the facts, and, therefore, constitutes an abuse of the court's discretion.

Although every improper financial order in a dissolution of marriage action does not necessarily merit a reconsideration of all of the court's financial orders; see, e.g., *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999); in this case, the court's order that the defendant obtain additional life insurance is interdependent with its other financial orders and may not be severed from them. We must, therefore, remand the case to the trial court on all financial matters.[2]

## II

The defendant next claims that the court improperly distributed the marital home.[3] Specifically, he argues that the court improperly (1) excluded evidence of a written contract, (2) awarded to the plaintiff a credit in the amount of $60,000 and (3) failed to provide specific figures in its financial orders. In essence, the defendant takes issue with the court's determination that moneys used to construct an addition to the marital home were a gift to the plaintiff from her parents, and he also takes issue with the financial orders flowing from that determination. We disagree.

[2] We note that the position of the dissenting opinion is that this court simply should vacate the trial court's order with regard to the additional insurance. We respectfully disagree. First, we are not similarly persuaded that the court's order that the defendant obtain additional life insurance may be severed from the other financial orders. To assume that the court would have framed the financial orders in the same manner, absent the additional insurance, would be mere speculation. In addition, the defendant, not the plaintiff, has appealed from the court's order. If the defendant had wanted to waive a rehearing or had agreed with the plaintiff, he should have entered into an agreement with her and withdrawn that issue from his appeal. That he has not done. Because the defendant has not seen fit to withdraw the issue on appeal, the remand should be in accordance with our case law and not be motivated by what the dissent refers to as the plaintiff's willingness to drop the additional insurance order unilaterally.

[3] We address the defendant's remaining claim regarding the distribution of the marital home because it is likely to recur on retrial. See *Litchfield Asset Management Corp.* v. *Howell*, 70 Conn. App. 133, 143, 799 A.2d 298, cert. denied, 261 Conn. 911, 806 A.2d 49 (2002).

The following additional facts are relevant to our disposition of the defendant's remaining claims on appeal. In 1992, the parties constructed an addition to the marital home. The plaintiff's father, Elzidor Miner, funded the construction by writing several checks payable to the plaintiff that totaled $60,000. After the addition was complete, Miner and his ailing wife moved into the marital home.

At trial, Miner testified that the $60,000 was intended to be a gift solely to his daughter. In addition, the plaintiff's testimony mirrored that of Miner. During trial, the defendant repeatedly proffered a copy of a document and argued that it evidenced a contract between the parties, but the court denied its admission as a full exhibit each time it was proffered.[4] On October 6, 2000, the court issued its ruling from the bench and found, inter alia, that the $60,000 was indeed a gift from Miner to his daughter.

The defendant now argues that the court improperly found that the $60,000 was a gift intended solely for the plaintiff rather than the consideration required by the contract he claims existed between the parties. We disagree. To address the defendant's claims regarding the marital home, we must first decide whether the court properly found that the $60,000 was a gift to the plaintiff rather than made in connection with a contract to which the defendant was a party.

As a preliminary matter, we first address whether the court abused its discretion in excluding from evidence a copy of the purported contract. The defendant argues that the document was admissible because it was rele-

---

[4] Prior to completion of the addition to the home, an attorney drafted a document between "Elzidor Miner and Jennie Miner" and "Jon Parley and Gail Parley" whereby the plaintiff's parents were to give $56,000 to the Parleys and, after completion, were to move into the marital home. The plaintiff's parents are the only signatories to the document.

vant to the determinations regarding the acquisition of assets. We decline to review his claim.

Pursuant to Practice Book § 61-10, "[i]t is the responsibility of the appellant to provide an adequate record for review. . . ." The defendant has failed to provide this court with a complete copy of the relevant transcripts. The transcripts that the defendant did provide are devoid of the court's decision and explanation regarding the exclusion of the purported agreement.

"Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claims] would be entirely speculative." (Internal quotation marks omitted.) *State* v. *Duteau*, 68 Conn. App. 248, 254, 791 A.2d 591, cert. denied, 260 Conn. 939, 835 A.2d 58 (2002). Because this court does not have before it the reasons for the exclusion of the agreement, we decline to review the defendant's claim that the exclusion was an abuse of discretion.

We now turn to whether the $60,000 was a gift intended solely for the plaintiff. "A gift is the transfer of property without consideration. . . . To make a valid gift inter vivos, the donor must part with control of the property which is the subject of the gift with an intent that title shall pass immediately and irrevocably to the donee. . . . The burden of proving the essential elements of a valid gift rests upon the party claiming the gift." (Citations omitted; internal quotation marks omitted.) *Kriedel* v. *Krampitz*, 137 Conn. 532, 534, 79 A.2d 181 (1951).

"The question of whether a gift inter vivos or causa mortis has been made is within the exclusive province of the court. . . . The determination of whether a gift has been made is not reviewable unless the conclusion of the court is one which cannot reasonably be made.

. . . The credibility of the witnesses and the weight to be accorded to their testimony is for the trier of fact. . . . This court does not try issues of fact or pass upon the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *Dalia* v. *Lawrence*, 226 Conn. 51, 70–71, 627 A.2d 392 (1993).

Similarly, "[t]he existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence. . . . To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. . . . Because the . . . claim involves a finding of fact, we must adhere to the long-standing principle that findings of fact are ordinarily left undisturbed upon judicial review." (Internal quotation marks omitted.) *Lussier* v. *Spinnato*, 69 Conn. App. 136, 140, 794 A.2d 1008, cert. denied, 261 Conn. 910, 806 A.2d 49 (2002).

"The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence . . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Noble* v. *White*, 66 Conn. App. 54, 60, 783 A.2d 1145 (2001).

In the present case, the court considered the testimony of Miner, the plaintiff and the defendant regarding whether the $60,000 was a gift or part of a contract. After hearing the testimony and reviewing the evidence, the court found that the $60,000 was indeed a gift to the plaintiff. It reasoned that "Mr. Miner testified it

was a gift. The checks were made out to [the plaintiff] specifically, from him, she paid the contractor who did the work on the house, and it . . . would also give [Miner] and his wife a place to live that was the least costly, allowing that gift to remain with his daughter where moneys might not otherwise be left to her by way of an inheritance." By finding that the money was a gift, the court implicitly rejected the defendant's argument that the parties had entered into a contract. As previously noted, this court will not pass on the credibility of the witnesses, nor will it retry the facts. After reviewing the record and transcripts before us, we conclude that there was evidence in the record to support the court's finding that the money was a gift to the plaintiff. In addition, we are not convinced, on the entire evidence, that a mistake has been committed. Therefore, the court's finding was not clearly erroneous.

Having concluded that the court's finding that the $60,000 was a gift solely to the plaintiff was not clearly erroneous, we now address the defendant's claims regarding the amount of the court's award relating to the marital home. The defendant first argues that the court improperly awarded to the plaintiff a credit in the amount of $60,000 from the equity in the marital home. He further contends that the court improperly failed to provide specific figures and instructions regarding the $60,000 credit. We disagree.

As previously noted, "[t]he standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [E]very reasonable presumption will be given in favor of the trial court's ruling, and [n]othing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can

warrant our interference." (Citation omitted; internal quotation marks omitted.) *Bleuer* v. *Bleuer*, 59 Conn. App. 167, 169, 755 A.2d 946 (2000).

In a dissolution action, the court is not required to distribute the marital property evenly between the parties. Id., 172. Pursuant to General Statutes § 46b-81 (a), the court, when entering a dissolution decree, may "assign to either the husband or wife all or any part of the estate of the other. . . ." In doing so, the court must consider all of the statutory criteria, including the cause of the dissolution, but it need not give equal weight to or explicitly address each factor. *Bleuer* v. *Bleuer*, supra, 59 Conn. App. 173; see also General Statutes § 46b-81 (c).

During its oral ruling, the court stated that it considered the statutory criteria and proceeded to distribute the parties' property. The court specifically found that "fault is a permissible category and . . . that the majority of the fault for the breakdown of this marriage lies on [the defendant's] doorstep." By considering the requisite statutory criteria, the court properly applied the law with regard to property distribution in a marital dissolution action. Because the court found that the defendant was at fault for the breakdown of the marriage and that the $60,000 was a gift to the plaintiff, the court reasonably could have concluded as it did. Therefore, the court did not abuse its discretion by awarding to the plaintiff a credit from the equity in the marital home in the amount of $60,000.

The defendant's final argument is that the court improperly failed to provide specific figures and instructions regarding the $60,000 credit. We disagree. The court found that the value of the property was $142,000 and that there was a mortgage in the amount of $41,000. With those base figures, the parties easily could subtract $60,000 from the equity and determine the value of each

party's interest in the property.[5] Therefore, the court did not abuse its discretion by neglecting to provide specific figures relating to the credit.

The judgment is reversed as to the financial orders only and the case is remanded for a new hearing on all financial issues.

In this opinion LAVERY, C. J., concurred.

FOTI, J., dissenting in part. Although I agree with the analysis set forth in the majority opinion, the result reached in reversing the trial court's order to obtain additional insurance and the affirmance of the judgment in all other respects, I write separately because I respectfully disagree with the majority's decision to remand the matter for a new hearing on all financial matters.

The majority properly concludes that the trial court improperly ordered the defendant, Jon A. Parley, to obtain additional insurance because the trial court did not have any evidence before it concerning the cost or availability of such insurance. Despite the fact that the defendant possessed some life insurance at the time of the dissolution, that fact alone did not provide a reasonable factual basis on which to order the defendant to obtain additional insurance.

The defendant, on the one hand, argues that the appropriate remedy is to remand the matter for a full reconsideration of all financial issues. The plaintiff, Gail A. Parley, on the other hand claims that she is willing to waive that portion of the court's order concerning life insurance so as to preserve the remainder of the court's judgment. The plaintiff does so despite the fact

---

[5] If the value of the property is $142,000 and there is a $41,000 mortgage on the property, then the equity equals $101,000. Pursuant to the court's order, the plaintiff is entitled to the first $60,000. In addition, the plaintiff was awarded 60 percent of the remaining $41,000 of equity.

that if the defendant is relieved of that obligation, the plaintiff presumably would benefit from a full reconsideration of all financial issues.[1]

"[I]ssues involving financial orders [in dissolution cases] are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Hopfer* v. *Hopfer*, 59 Conn. App. 452, 458–59, 757 A.2d 673 (2000). Consequently, when an appellate court reverses a trial court judgment in a dissolution matter on the basis of an improper financial order, the remand usually requires the trial court to reconsider all of its financial orders. Our Supreme Court, however, has stated that a financial order in a dissolution case is severable when "it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors." *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999).

I am persuaded that the court's life insurance order in the present case may be severed from its other orders. It appears from a review of the record that the court determined its other financial orders independently from that issue and that the other orders are not interde-

---

[1] The majority argues that the plaintiff's willingness to waive her claim to additional insurance should not influence this court's remand. The majority also points out that had the defendant, who is proceeding pro se, wanted to waive a rehearing on all financial issues, he could have entered into an agreement with the plaintiff to that end and could have withdrawn the issue from his appeal. Although I cannot speak as to the reasons underlying the defendant's decision not to do either of those things, I nonetheless recognize that on remand for a full reconsideration of all of the court's financial orders, the court likely will find a way to replace such part of its so-called "mosaic" that conferred a benefit to the plaintiff in the form of the defendant's additional life insurance by ordering him to confer some other benefit to the plaintiff. Stated otherwise, it is the plaintiff, and not the defendant, who likely will benefit on remand.

pendent with the life insurance order.[2] The defendant does not in any way explain why a reversal of that order warrants a full rehearing on all financial issues. The court ordered the defendant to supplement an existing insurance policy merely as a means to secure a $50 per week alimony payment.[3] In contrast to the panoply of financial orders issued by the court, the life insurance order was of marginal significance and would have imposed, at most, a minimal burden on the defendant. Apart from the requests of either party, it is this court's duty to fashion an appropriate remedy in this appeal. In so doing, we should be mindful of the need to conserve judicial resources, as well as the burden that court appearances and costs visit on litigants. In light of those concerns, I do not see a useful purpose in ordering a new hearing on all financial orders simply because we have concluded that the court's order concerning additional insurance was improper. Instead, I am convinced that "reversing the judgment only insofar as it relates to that order does not undermine the other financial orders because its impropriety does not place the correctness of the other orders into question." Id., 279.

For those reasons, I respectfully dissent only as to the majority's remand for a new hearing on all financial issues.

---

[2] My examination of the record reveals that the court carefully crafted the "mosaic" that constituted its judgment and then, almost as an afterthought, rendered the life insurance order in question.

[3] I view the life insurance order as a de minimus order of little financial significance.